**In the Matter of James George STAFOS, Bankrupt.**

**No. 21239–B–4.**

United States District Court, D. Kansas.

May 19, 1972.

Wash H. Brown & Thomas E. Joyce, Kansas City, Kan., for bankrupt.

Laurence M. Jarvis, Schnider, Shamberg & May, Kansas City, Kan., for trustee.

### MEMORANDUM OPINION

O'CONNOR, District Judge.

Bankrupt has petitioned for review of the referee's order of January 24, 1972, denying his claim to a rural, as opposed to urban, homestead. The pertinent facts, as determined in substance by the referee, are as follows:

1. Bankrupt Stafos and his wife acquired title as joint tenants with right of survivorship by warranty deed to 13.2 acres of land located in Wyandotte County, Kansas, on November 23, 1945.

2. Since purchase of the land, the Stafos have continuously resided on it with their family as a homestead.

3. When the land was purchased in 1945, it was outside the corporate limits of any town or city.

4. On March 1, 1966, by Ordinance No. 45492, the city of Kansas City, Kansas, annexed the land in question as part of the city.

5. On December 24, 1970, James George Stafos filed a voluntary petition in Bankruptcy, claiming 13.2 acres as

his homestead exemption under the provisions of the Kansas Constitution, Article 15, § 9, and K.S.A. 60–2301:

"60–2301. Homestead; extent of exemption. A homestead to the extent of one hundred and sixty (160) acres of farming land, or of one acre within the limits of an incorporated town or city, occupied as a residence by the family of the owner, together with all the improvements on the same, shall be exempted from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; . . ."

6. Reva Stafos, wife of the bankrupt, who occupies the premises with her husband as a homestead and is a joint tenant, did not join in the bankruptcy proceedings.

7. The land in question is unplatted, but zoned "J" Heavy Industry. Two buildings on the property have been used for industrial purposes.

8. The property in the same general vicinity is used for industrial purposes.

9. An experienced realtor testified at the hearing on this matter that the land in question was valued at $10,000 per acre, while farming land in the area was selling for approximately $650 per acre.

10. Some of the land has been used to grow vegetables.

11. The character of the land in question on the date of the filing of the petition was urban industrial as opposed to rural farming land.

■ Although there is some evidence to support the bankrupt's position, this court is bound upon review by the referee's findings of fact unless they are clearly erroneous. Washington v. Houston Lumber Company, 310 F.2d 881 (10th Cir. 1962). Despite the additional evidence presented by the bankrupt at the hearing on his Petition for Review, the court is not prepared to overturn the referee's findings, which are amply supported by the evidence. We therefore look to the Kansas law to be applied to these facts.

■ The referee, in his extensive conclusions, has thoroughly reviewed the Kansas law with respect to the effect of an extension of city limits on the homestead exemption. The Supreme Court of Kansas has steadfastly held, directly or by implication, that the constitutional and statutory provisions must be strictly construed despite the " . . . great hardships . . . attending the unnecessary extension of city limits over lands which could more appropriately be used for agricultural purposes" because the court " . . . is not the proper tribunal to correct that evil." Sarahas v. Fenlon, 5 Kan. 592 at p. 595 (1870). See also, Water-Supply Co. v. Root, 56 Kan. 187, 42 P. 715 (1895); Fletcher v. Weigel, 152 Kan. 104, 102 P.2d 1055 (1940). The Kansas cases cited and discussed by the referee follow the general rule as stated in 40 C.J.S. Homesteads § 58 p. 498:

"While there is authority to the contrary, in most jurisdictions where the question has been raised it has been held that, even without the owner's consent and against his wishes, the limits of a city, town, or village may be extended so as to include what was formerly a rural homestead to afford the owner only the amount available as an urban homestead."

The bankrupt here contends that the court should adopt the minority rule:

"Where the mere fact that land lies within the boundaries of the city, town, or village, is not regarded as necessarily stamping it with the character of urban property for homestead purposes . . ., it is necessary, in order that the owner shall lose the right to a rural homestead and be restricted to the right to an urban homestead, that the land, in addition to being embraced within the extended municipal limits, shall be otherwise actually impressed with an urban character." 40 C.J.S. Homesteads § 58 p. 498.

No Kansas case has been found tending to support the minority view. Even if this were the law of Kansas, the ref-

eree's findings lead to the conclusion that this land is urban industrial in character and no longer is "farming land" as contemplated by the Constitution.

The referee's findings and conclusions are adopted *in toto*, and his order is affirmed in all respects. The bankrupt is entitled only to the one-acre homestead exemption.

It is so ordered.