J. M. THOMPSON AND WIFE FRANCES THOMPSON; JOHN H.
SIMPSON AND WIFE RUTH SIMPSON; GARY R. BURLESON
AND WIFE ANNETTE BURLESON; JAMES M. SMITH AND
WIFE MARIAN SMITH; JIM R. BOST AND WIFE BETTY BOST;
WILLIAM G. SHAW AND WIFE MONA B. SHAW; CHARLIE G.
RITCHIE; GEARNIE F. SCHENK AND WIFE NELLIE L.
SCHENK; W. E. OVERCASH AND WIFE DAISY S. OVERCASH;
JACK M. BROWN AND WIFE ELSIE W. BROWN; JAMES R. HILL
AND WIFE VICKI S. HILL; MRS. S. H. BERNHARDT; JOHN
JUNIOR SMITH AND WIFE ROBERTA L. SMITH; S. RAY BERN-
HARDT AND WIFE SUE BERNHARDT; MELVIN L. BARRINGER
AND WIFE SARA D. BARRINGER; A. G. SNIDER AND WIFE
VIVIAN P. SNIDER; DONALD R. BASINGER AND WIFE BILLIE
JEAN BASINGER; JERRY P. SINK AND WIFE TRICIA A. SINK;
GLEN PEELER AND WIFE JEAN R. PEELER; JAMES E. BELL
AND WIFE QUEEN W. BELL; R. G. PICKERAL AND WIFE
DORA M. PICKERAL; J. A. GENTSCH AND WIFE IRENE C.
GENTSCH; CLYDE S. MILLER AND WIFE NELL J. MILLER;
J. B. GOBBLE AND WIFE MOLLIE M. GOBBLE; LARRY D. CORL
AND WIFE CAROLYN B. CORL; GORDON L. PEACOCK AND
WIFE REBECCA PEACOCK; MRS. GRACE Y. KLINE; INDI-
VIDUALLY AND FOR AND ON BEHALF OF THEMSELVES
AND ALL OTHER PROPERTY OWNERS LOCATED IN AN-
NEXATION AREA I, Petitioners v. THE CITY OF SALISBURY,
Respondent

No. 7419SC944

(Filed 19 February 1975)

1. Municipal Corporations § 2— appeal from annexation ordinance —
   burden of proof
       When, on the face of the record, a city has substantially complied
   with statutory requirements for annexation, the burden is on peti-
   tioners who appealed from the annexation ordinance to show by com-
   petent evidence that the city failed to meet these requirements.

2. Municipal Corporations § 2— annexation — 60% "use" and "sub-
   division" tests — golf course as one commercial tract
       A municipality properly classified 140 lots and tracts comprising
   205.65 acres in use as a privately-owned golf course as one commercial
   tract in determining whether an area to be annexed met the 60%
   "use" and "subdivision" tests provided in G.S. 160-453.16(c)(3) [now
   G.S. 160A-36].

3. Municipal Corporations § 2— annexation — residential use — vacant
   lots in common ownership with lots with houses
       A municipality properly classified as in residential use 225 vacant
   lots and tracts which are part of a platted subdivision and are in
   common ownership with lots and tracts upon which dwellings have
   been constructed.

4. **Municipal Corporations § 2— annexation — 60% "use" and "subdivision" tests — smallest unit on tax maps**

A municipality did not act arbitrarily and capriciously in using the smallest unit of land subdivision appearing on the county tax maps in determining whether an area to be annexed met the 60% "use" and "subdivision" tests of G.S. 160-453.16(c)(3) [now G.S. 160A-36]. G.S. 160-453.22 [now G.S. 160A-42].

5. **Municipal Corporations § 2— annexation report — extension of services**

Annexation report met the requirements of G.S. 160-453.15 [now G.S. 160A-35] that it set forth plans for the extension of municipal services to the annexed area.

APPEAL by petitioners from *Exum, Judge*. Judgment entered 26 May 1974 in Superior Court, ROWAN County. Heard in the Court of Appeals 23 January 1975.

Petitioners are residents of a 2,125.60-acre tract of land located in Rowan County. On 3 April 1973, the City of Salisbury, a city with a population in excess of 5,000, passed an ordinance calling for the annexation of this tract, referred to as Area I in the Official Annexation Report. Pursuant to G.S. 160-453.18 [now G.S. 160A-50], petitioners appealed to Superior Court for review. From judgment affirming the ordinance, petitioners appealed to this Court.

*Carlton, Rhodes & Thurston, by Gary C. Rhodes, for petitioner appellants.*

*James A. Hudson and Larry Ford for respondent appelle.*

ARNOLD, Judge.

[1]  When, on the face of the record, the City has substantially complied with the statutory requirements for annexation, the burden is on petitioners to show by competent evidence a failure to meet these requirements. *Dunn v. City of Charlotte*, 284 N.C. 542, 201 S.E. 2d 873 (1974) ; *In re Annexation Ordinance*, 278 N.C. 641, 180 S.E. 2d 851 (1971). Upon a careful review of the record and the arguments of counsel, we have concluded that this burden has not been met.

[2]  Petitioners first contend that Area I does not meet the requirements of G.S. 160-453.16(c) [now G.S. 160A-36] that part of the area to be annexed be developed for urban purposes. Such an area is defined as one that:

"(3)  Is so developed that at least sixty per cent (60%) of the total number of lots and tracts in the area at the

time of annexation are used for residential, commercial, industrial, institutional or governmental purposes, and is subdivided into lots and tracts such that at least sixty per cent (60%) of the total acreage, not counting the acreage used at the time of annexation for commercial, industrial, governmental or institutional purposes, consists of lots and tracts five acres or less in size."

These criteria are known as the "use" test and the "subdivision" test. *Lithium Corp. v. Bessemer City*, 261 N.C. 532, 135 S.E. 2d 574 (1964); *Adams-Millis Corp. v. Town of Kernersville*, 6 N.C. App. 78, 169 S.E. 2d 496, *cert. denied* 275 N.C. 681 (1969). Both tests must be met.

The Official Annexation Report contains the following description of Area I:

| | |
|---|---:|
| "Total number of lots and tracts | 3,955 |
| Number of lots and tracts used for residential, commercial, industrial, institutional, and governmental purposes | 2,587 |
| [2587 ÷ 3955] | 65.4% |
| Total acreage, not used for commercial, industrial, governmental, or institutional purposes | 1,486.09 |
| Acreage, not used for commercial, industrial, governmental or institutional purposes, consisting of lots and tracts five acres or less in size | 957.96 |
| [957.96 ÷ 1,486.09] | 64.5%" |

Petitioners contend that the above figures are erroneous. They argue that 140 lots and tracts, comprising 205.65 acres, are presently in use as a privately-owned golf course and therefore are improperly classified as being in commercial use. Corrected "use" figures allegedly would result in a failure to meet the "subdivision" test.

The trial court found that these 140 lots and tracts are "presently in 'commercial' use within the intents and purposes of G.S. 160-453.16 (c) (3)," and that the acreage is "in present

use as one (1) integral commercial tract." These findings of fact, to which petitioners have not excepted, will not be disturbed on appeal.

Moreover, we agree with the trial court that a golf course, open to the public and operated for profit, is used for a commercial purpose. Petitioners concede that the clubhouse area is being put to a commercial use but contend that the course itself is used for recreation. This argument is not persuasive. The clubhouse and fairways are a single entity. A commercial venture may involve recreation, for example, a football stadium, a race track, or a bowling alley. The fact that the acreage in question is zoned residential is not determinative of its use under the statute, particularly in light of petitioners' argument that none of it can be classified "residential" because no habitable dwelling is on it. We hold that this acreage is properly classified as being used for a commercial purpose.

[3] Petitioners also argue that the City improperly classified 225 vacant lots and tracts as being in residential use. These 225 lots or tracts are part of a platted subdivision and are in common ownership with lots and tracts upon which dwellings have been constructed. Petitioners contend however that, because they are vacant and have their own frontage, they are not in residential use. In *Adams-Millis Corp. v. Town of Kernersville, supra* at 84, 169 S.E. 2d at 501, holding that a lot need not contain a habitable dwelling in order to be classified as in residential use, this Court said, "If A owned two lots, each having a 75-foot frontage, and he constructed his residence on one lot and landscaped the other with a pond, shrubbery, etc., surely it would be less than reasonable to classify the lot containing the dwelling as in residential use and the other lot as not in residential use." Following this rationale, we now hold that the lots in question were properly classified.

[4] Petitioners further contend that it was arbitrary and capricious for the City to determine whether the area met the standards of G.S. 160-453.16 (c) (3) because it used the smallest unit of land subdivision appearing on the Rowan County maps. Many of the lots were 25 feet in width.

G.S. 160-453.22 [now 160A-42] provides that for the purposes of meeting the requirements of § 160-453.16 (c) (3) [160A-36] "the municipality shall use methods calculated to provide reasonably accurate results," and that on appeal to

Superior Court the estimates of the municipality shall be accepted "[a]s to degree of land subdivision, if the estimates are based on an actual survey, or on county tax maps . . . unless the petitioners on appeal show that such estimates are in error in the amount of five percent (5%) or more."

The trial court, in its findings of fact, found that the City " . . . in an effort to determine if the area qualified . . . , computed the lot and tract count and their usage based on all divisions of land within Area I as shown on Rowan County Tax Maps; that this was a proper method and calculated to provide reasonably accurate results of the land use existing in Area I as required by G.S. 160-453.22." The City's method was authorized by statute, and the trial court's findings will not be disturbed.

[5] We now turn to the question of whether the Official Annexation Report meets the requirements of G.S. 160-453.15 [now 160A-35] that it set forth plans for the extension of municipal services to the annexed area. Petitioners argue that the report contains no analysis of the needs of Area I for such services. While the extent to which the area needs municipal services is among the factors to be considered in a decision to annex, the statute requires only that the City demonstrate an ability to serve the area to be annexed. *See Lithium Corp. v. Bessemer City, supra; Williams v. Town of Grifton,* 19 N.C. App. 462, 199 S.E. 2d 288 (1973). The trial court found that petitioners had offered no evidence of any failure to comply with the statute. Petitioners have not excepted to this finding. Their argument therefore is overruled.

The record shows that in both the procedure followed and in the character of the area to be annexed, the City of Salisbury was in substantial compliance with Chapter 160 [now 160A] of the General Statutes. Petitioners have failed to rebut this *prima facie* showing of validity. The judgment of the trial court is affirmed.

Affirmed.

Judges VAUGHN and MARTIN concur.